17-2502 May I proceed, Your Honor? Yes. Mike Valake again for United Technologies. The board here committed two errors. First, taking the final written decision standing alone, there's a lack of substantial evidence to support the board's finding that claims 15 and 16 were anticipated based on inherency. That's the first error. If we move beyond the final written decision and look at the procedural history here, GE never rate... Yes, Judge. Let me just tell you what I'm thinking, so you at least can decide how to proceed. It seems to me there's a distinct possibility that while the board indisputably referred at several places to the inherency standard, that that was just a labeling problem, not a substantive problem, and that what it really decided was on the basis of what we've done in Graves and REG Synthetic or whatever that was called, which is to say a person of skill in the art of taking the knowledge of such a person would, upon reading what is in... Is this Wenthes or Willis? This is Wenthes. This is Wentes, yes. Figure four of Wentes, right. Would immediately see you've got the input number, you've got the output post-tech number. Everybody in the business knows what techs do. They make really only a small change, and therefore when you start with a ratio of, what is it, 14.5, that's not going to drop to anything like the number five. And so this is not an inherency case. It is a case about teaching to a person of skill in the art who brings to bear the knowledge of such a person, which includes what you know about what techs do, so that this inherency business, even the board should never have used that language, but substantively it doesn't matter. Then we need to look at, the board said first, clean construction, you need to measure LPT pressure ratio prior to the inlet at the outlet. That's the proper place. Secondly, the board then said and found... The board accepted that. Right. Wentes does not disclose a pressure at the outlet of the LPT. And that's when you look at Wentes Figure 4, you see there's no pressure there. I didn't quite say that. Sometimes I get confused with all these cases. I thought that's the one in which it used the phrase, in a sense. Agreed to an extent with UTC's position. To an extent. But then it immediately says, but here's the critical degree to which that's not true, which is what I just said. Everybody would know, everyone relevant would know, the ordinary skilled artisan would know that techs change these pressures only just a very little bit. Well, if we've gone then beyond, you've got to measure the pressure at the outlet. And you can look at Wentes and see there's no pressure at the outlet. Now we're in the part where what happens in the tech. And Your Honor mentioned the cases that they cite where this is just simply still an express disclosure. I know the Baxter case in particular, they rely on where there was a commercial bag. And the question was, well, what would the person of ordinary skill understand that commercial bag? Baxter engraves and reg synthetic or whatever that's... But the evidence... And the reg one is interesting because that was not just those mathematical calculation or conversion. It was a conversion that drew on factual information that the person of skill in the art would have access to because it used some empirically derived numbers in the literature. It's not just changing British units to... They converted the area percentage to a weight percentage. Right. Yes. That's something that is readily apparent on the face of the disclosure. And then the question becomes, what does that mean? I think here we're in a very specific part of measuring an LPT pressure ratio. And it's simple math. As we see here, you need two numbers. When you don't have that second number, that's a gap in the disclosure. And we submit that the board filled that gap with inherency. Your Honor's asking about how that could still be an express disclosure. But then what Dr. Abari does in kind of filling this in with respect to the tech and what the person of ordinary skill would understand, the only evidence he really offers is his statement that he's not aware of such a turbofan, which would have such a significant drop across the TEC. And that's not a statement that the person of ordinary skill is looking at an express disclosure... Isn't it a fair inference that if this super expert, extraordinary person, isn't aware of anything out there in the tech world, TEC world, that would differ from this, it's a fair inference that an ordinary skilled person also would understand that all the techs out there have this extremely small pressure drop. Well, and I mean, at that point, we have inferences that is supporting that it's probable that the pressure there at the outlet is... And, you know, GE never really does the math. They simply say it would be slightly less after the tech. But the math is trivial. We don't know whether the math is trivial because what we simply have to go on is his statement, he's not aware of a turbine exit case, which has such a pressure drop. That's the sole evidence that we have to make this leap that... There's no contrary evidence, right? There is no contrary evidence which actually gets to what we think is where the board exceeded its statutory authority as well as violated the APA because we very specifically... We start with the petition under Magnum Oil here, and they need to put with particularity the theory they're proceeding under in the petition, and they did so. They had three sentences actually on claims 15 and 16, two of which went to claim construction, and then they, based on that claim construction, said the LPT pressure ratio after the tech was a certain number. We responded to that based on claim construction and the fact that Wendis did not expressly disclose, and we dropped a footnote saying they weren't proceeding under obviousness or inherency, and importantly, Judge, we didn't put forth an expert because we didn't need an expert based on our claim construction and the fact that Wendis didn't disclose the pressure at the outlet. Go to appendix 14, and this is Dr. Abari. This is about Dr. Abari's testimony. And he says that the person of ordinary skill and art understands the guide vanes in the TEC to have minimal total pressure drop, that the total pressure drop across a turbine exhaust case would be on the order of only a few percent, that's less than five, and then under normal operating conditions, then goes on to describing the TEC where there is virtually no pressure drop across the vanes. That seems to me to be substantial evidence, and why that was credited. Why shouldn't we find that to be substantial evidence? Substantial evidence to support the board's decision under an express disclosure or an inherency theory? No, just an express disclosure. Because at that point, what Dr. Abari is saying is, we don't see the pressure at the outlet of Wendis' LPT, but based on what we understand the person of ordinary skill would know, what happens in a TEC, that it's going to be slightly less. And at that point, what Dr. Abari is doing here is, he's making the case that you can infer what that pressure would be at the outlet. I mean, he's filling a gap at that point to say what the person of ordinary skill would understand. That's still, if we take the claim construction that the board got right and gives you a number that you need at the outlet, what he's really doing here is saying, you can infer that number. It's our position that that's supportive, perhaps, of an obviousness theory, which GE cited obviousness cases in their reply brief when they were talking about such evidence. But that's still not going to be enough to constitute express anticipation with the right claim construction. If I could for a minute get back to what happened here procedurally, we didn't offer an expert at that point because we were basing this that there was no express disclosure in Wendis,  that it doesn't matter what claim construction you use and the evidence we're talking about now from Dr. Abari. And so when we argued this in front of the board... Is Dr. Abari's testimony unrebutted? Is that what you're saying? It is, Your Honor, because we have made the tactical decision in responding in the POR that they're pursuing express anticipation theory. We are right on claim construction. Therefore, we don't need an expert. If we would start to go to gap-filling or inherency... Doesn't the testimony alone raise a specter of an inherency theory? I think here we need to distinguish between evidence they're offering and argument they're offering. I mean, Magnum Oil is very specific that the board can't... I'm interested in evidence that they're offering. You're coming back with an attorney strategy. You made the strategic decision not to rebut Dr. Abari's testimony. Our opportunity in the POR, we made our strategic decision. They put forth all this evidence in reply. At that point, procedurally, we can offer testimony to rebut him. Now, we did file a motion to strike, and we were vigilant here, and we moved to strike a certain portion of Wendis, which they had not put in the petition. You didn't move to strike Dr. Abari's. We didn't move to strike Dr. Abari's testimony here because we never knew they perhaps were trying to fill a gap here with respect to an inherency theory. We think it's not enough for an express disclosure, but to the extent the board then in its decision was gap-filling with an inherency theory, we never had any notice it would actually go to that theory. And so, no, we didn't move to strike those portions of it, and for the reasons stated, we don't think it rises to that. Wasn't Dr. Abari's testimony in response to your response to the POR petitioner's response? According to GE, they're saying, based on your claim construction, we're simply responding to that. Now, they could have put that in the petition. They have every reason to believe in a case where we're going to construe LPT pressure ratio and the specification here at Joint Appendix 50, Column 4, Lines 24 through 27. It's very specific. You measure the LPT pressure ratio prior to the inlet and at the outlet. So Dr. Abari was responding to the patent owner's response, correct? At that point, he was responding to the patent owner's response, yes. Still doesn't allow them to take what's an express anticipation case and change it, but technically he was responding at that point. I see I have a minute left. We have a couple of minutes, but any questions? You reserved three minutes of your time. Right, and I have a minute left now. And I just wanted to touch on briefly that we don't believe that this case should be remanded. In fact, we believe, based on what the board did, one, they got the claim construction right, and two, if you apply that claim construction, there is no express disclosure in WENDIS at the outlet of the LPT. If we apply that claim construction, if we look at WENDIS, the case they actually brought in the petition, it's clear based on the board's decision that UTC should prevail and they failed to prove express anticipation. May it please the court, whether this is categorized as express anticipation or inherent anticipation, the fact of the matter is there is substantial unrebutted evidence in the form of Dr. Abari's testimony and in the form of the objective extrinsic evidence that he relied upon to show that with respect to a turbine exhaust case, a TEC, there is virtually no pressure drop across such a device. That is one of UTC's own patents that Dr. Abari relied on. With respect to it being express anticipation... Yeah, can I just ask, aren't you over-reading Abari's declaration to say more than it actually does? That is, I wasn't sure that it said every turbine exhaust case, everyone necessarily has a very small pressure drop, only that in the world of TECs that is out there right now, that would be true. That feels like it's short of the inherency standard of necessity. I would respectfully disagree, Your Honor. I believe that what Dr. Abari said was that there are no TECs in the industry that he is aware of. Again, this is a man who is perhaps one of the foremost, if not the foremost. I will stipulate that he said that in the current world, all of them have this property. Tell me why that meets the standard of inherency. I want to keep that separate. This is not a new problem of separating inherency from anticipation with the addition of knowledge. And it may be that each of those two things is itself confined and that we ought not to allow them to slop over into each other because there's always obviousness. And if only you had pled that, you'd be able to say undisputed evidence, or at least on this record it would be undisputed. The record might, in fact, have been different. I don't know. But just focusing on inherency, really does inherency cover the situation where all the particular market existing implementations of something have a certain property? Doesn't inherency require that they have to have that property? If a party like GE comes in with the evidence that establishes we are aware of no reference or no teaching that shows that a turbine exhaust case does not have a minimal pressure drop. At that point, it would have been incumbent on the patent owner to come in with some form of evidence that would have rebutted or cast doubt even on Dr. Abari's testimony and the objective extrinsic evidence that he relied on to support his testimony. UTC did not do that. So under a preponderance of the evidence standard, which is what we had here, the only evidence is that turbine exhaust cases have a minimal pressure drop. Therefore, with respect to this particular claim limitation, which is a very broad claim limitation, it just says pressure ratio over 5. When Dr. Abari showed that it was 14.4 with the tech, it necessarily, under the evidence, is still well above 5, even excluding the tech, because the only evidence is that techs have virtually no pressure drop. What is your best one or two inherency cases that allow necessity, which I think is the inherency standard, to be met by pointing to what has been marketed in the real world? Well, for example. As opposed to a conversion scientific necessity that when these two chemicals that are mentioned are mixed, this is what science tells you will always happen. But just the fact that there are 17 techs in the marketplace and everyone has this feature, that's of a different order. Where have we ever said anything to bring those into inherency? I think this court has looked at, in the past, in the inherency cases, it looks at the specific evidence that's in front of it and it looks with, for example, it looks to the specific products or implementations that have been discussed in the evidence. The board cited the MEHL case from this court, 192 F. 3rd, 1362. Is that the hair growth case? It is. It's the hair growth case. And they said specifically, and it's a good case, because it shows two separate devices, one in which there was not sufficient evidence of inherency, the second of which there was. And the panel there focused specifically on this. The one that did show inherency said it was necessarily known that a person would use the device in a vertical direction so that it met the particular claim limitation. If it wasn't used in a vertical direction, it might not have. But the board said, here, all the evidence points to the only way you would use it is in the vertical direction. That was enough for inherency. The panel did not look at every single hair removal device must be used in a vertical direction, for example. They looked at the specific evidence that was in front of them, and I believe that would be the exact situation here under our preponderance of the evidence standard. The only evidence is that techs have virtually no pressure drop, and therefore it necessarily flows to a person already skilled in the art reading WENDIS, that it would have a pressure ratio, even excluding the tech, of well above 5. But fundamentally, we don't believe that this is an inherency case. The board said specifically, I agree, they cited some inherency cases, but when you look at what they said, they said specifically that the record is persuasive that WENDIS can be understood by one of skilled in the art performing basic technical analysis and simple math as having a pressure ratio of about 5 or greater. So the board specifically said that WENDIS has a pressure ratio above 5. That's, I don't believe, inherency. That falls within the scope of express anticipation, and that is precisely what this court found in the REG synthetic case. Judge Toronto, you handled, you mentioned it exactly, correctly. There was, it wasn't just a one-to-one conversion of the weight percentages in the prior art in that case. The claim required a weight percentage of above 75%. The prior art did not disclose weight percentages at all, and there actually needed to be reference to extrinsic evidence to show these relative response factors that could then be used to perform math, to do some conversions, to not arrive at an exact one-to-one correspondence with weight percentage, but to arrive at what this court said was a reasonable estimate. And this court there specifically said this is not an inherency case. They said explicitly that this is not an inherency issue because the challenge limitation is not missing from the prior art. It's on all fours with the facts here. The only evidence is that, excluding the tech, you would still have a pressure ratio that a person of ornery skill in the art would understand would be well above five. What that number may be, not disclosed, but still, it would be necessarily known to a person of ornery skill in the art. It's expressly known to a person of ornery skill in the art that would be above five. With respect to the fact that this was presented in the reply brief, it would be an impossibility for a petitioner to have to anticipate and guess at every single claim construction issue that the patent owner may raise in its petition. If we had to do that, the petitions would be hundreds of pages long and that's just simply not a practical approach to this. They came in with... Was this claim construction issue raised before the patent owner response, either at the institution stage or in the institution decision? That is where the denominator was measured. It was raised only... No, it was not, Your Honor. It was only raised in their patent owner response the first time around and that was because these are dependent claims and the focus of the patent owner response was actually on the independent claim, which they later disclaimed. So there's not a lot of... In the preliminary patent owner response. Correct, in the patent owner preliminary response and then in the institution decision. The institution decision just said, GE has shown that it's 14.4, that's enough to get instituted on. So they raised it in the patent owner response, came out with this claim construction that we disagree with, but nonetheless came out with it. We submitted evidence in our reply brief to show, well, even under that claim construction, it's clear that Wendis anticipates because of all the evidence that Dr. Obari put in. This court has said in the past, for example, in the Belbin case, that that type of response to a patent owner response is perfectly permissible and if there was some problem or issue with respect to Dr. Obari's reply declaration, UTC had numerous options to address it. They could have moved to strike it, which with respect to this particular event... They did say they moved to strike. Did they move to strike specifically Dr. Obari's testimony? No, Your Honor. Not with respect to his testimony about what a turbine exhaust case discloses. They did not. They moved to strike his testimony regarding what's called the disclosure in Wendis of the expansion ratio, which Dr. Obari said an expansion ratio is the same as a pressure ratio because Wendis actually expressly says that the expansion ratio, which excludes the tech, is 12.71. They moved to strike that. Was there any type of objection that you had advanced? This is a new theory or any motion to strike along with mine? No, Your Honor. UTC did not take Dr. Obari's declaration after he submitted the reply. They did not ask to submit a surreply, which under the rules they could have done and which this panel, this court, excuse me, has authorized under Belbin. Does evidence go with the surreply? I'm sorry, Your Honor. Is there evidence that can be submitted with the surreply? I don't believe there's any one way or the other that says they could not submit a surreply declaration if they had so wanted. The fact is they made a strategic choice, as Mr. Villeig said. They made the strategic choice by putting a footnote in their patent owner response that says we're not addressing inherency. We believe we're just not going to address it. But that isn't their choice to make. It's up to the board to decide what's in or out with respect to the actual trial. And so here, the board was fully within its rights to rely on Dr. Obari's reply evidence, and then particularly when there was no rebuttal to it. There are two alternative grounds that this court can affirm on that I wanted to touch on. One is the claim construction. We don't believe that the court's claim construction is correct. The specification says specifically that you measure the pressure at the outlet of the low-pressure turbine prior to the exhaust nozzle. That's column 4, lines 24 to 27. And it was undisputed that the tech is before the exhaust nozzle. Even UTC said in its patent owner response at Appendix 2214 that the turbine exhaust case is prior to the exhaust nozzle. So it was perfectly reasonable to construe the claims under a broadest reasonable interpretation such that you can measure the outlet pressure either at the tech or before the tech. And the board's construction was unnecessarily narrow because it specifically excluded the tech. If this court reverses that claim construction, then it doesn't even need to get into the issues of inherency or express because there's no dispute that if the tech is excluded, WENDIS specifically expressly discloses a pressure ratio of 14.4. The last point is that the second ground is that we did submit evidence in the reply that they moved to strike that expansion ratio is the same as pressure ratio and WENDIS discloses an expansion ratio of 12.71, which is excluding the tech. The board did not rule on their motion to strike, but we cited the exact page of WENDIS with respect to the low pressure turbine for that point in our petition. And therefore, the board was within its rights to rely on that under this court's decision and on invasive. Thank you, Counselor. Thank you, Your Honors. Thank you. First, and I'll try to go in order of some of the questions to GE's counsel. First, there was no definitive statement from Dr. Abari that meets the inherency standard. He didn't say there's no engine out there. I've looked at all the engines and there's no engine out there that would have such a pressure drop across the tech. So if the decision the board render is based on inherency, there's not substantial evidence to support that because he simply said he wasn't aware of such an engine. I want to then go to, Judge, you asked GE counsel specifically whether we had raised this claim construction issue at the outset. And I'm at the Joint Appendix 2136, which is the institution decision. And it states, patent owner asserts that petitioner incorrectly measures the low-pressure turbine exit pressure at the turbine exit case rather than at the outlet of the low-pressure turbine. So we did raise this in the POPR. We did join the issue at that point that this is a claim construction case and there is no pressure at the outlet of WENDIS Figure 4. The board instituted because they said, Dr. Abari says the outlet of the low-pressure turbine is after the turbine exit case. And so then moving forward, I want to go to, GE counsel talked about unrebutted evidence. Well, we had our chance in the POR to submit our evidence. And when we put in that footnote that they weren't proceeding under inherency and obviousness, when GE came back with Dr. Abari's statements, that's evidence. But the question is, where does that evidence go to? Under what theory are you proceeding? And at that point, we had no notice whatsoever they were proceeding under an inherency theory. They cited obviousness cases. And there were no questions whatsoever from the board that this was an inherency case at oral argument. We think if you look at the final written decision, that what the board did is there was a gap in WENDIS Figure 4 and they cited inherency cases because they were filling that gap. I want to very briefly touch on the two points, the alternative grounds that GE's counsel raised. He mentioned claim construction. We believe it's quite clear on the spec that it should be measured at the outlet. And then he mentioned the expansion ratio, which again is something they could have raised in the petition. At Joint Appendix 4421, we actually had a demonstrative where the specific 12.72 they're relying on, they cited that sentence four times in the petition and Dr. Abari's declaration. And they specifically deleted from that sentence in the opening papers, the 12.72 expansion ratio. So when they put that in the reply, we moved to strike and believe it should be stricken. The board didn't consider it for purposes of its decision. You want to conclude? I'm done, Your Honor. Okay, thank you very much. Thank the party for those arguments.